No. 90-488

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

NICHOLAS LEE DANIELS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
               In and for the County of Rosebud,
               The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      J. B. Wheatcroft, Miles City, Montana

      For Respondent:

      Hon. Marc Racicot, Attorney General; Joseph E.
      Thaggard, Assistant, Helena, Montana
      John Forsythe, County Attorney, Forsyth, Montana

**FILED**

MAY 23 1991

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: March 28, 1991

Decided: May 23, 1991

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Nicholas Lee Daniels appeals from a conviction of burglary after a jury trial in the District Court of the Sixteenth Judicial District, in and for the County of Rosebud, State of Montana. We affirm.

Two issues are presented on appeal:

1. Whether the defendant and appellant was denied his right to a speedy trial.

2. Whether the District Court erred in admitting certain evidence of other crimes.

At about 12:30 a.m. on the morning of June 18, 1989, Jerry's Big Sky Service, a service station located in Forsyth, Montana, was burglarized. Items taken from the service station included cash, candy, sunglasses, a car battery, and cigarettes. During the same night, a pickup truck was stolen from the nearby residence of one Gerald Schaefer.

On June 19, 1989, appellant, then seventeen years old, and his brother, Charles then sixteen, were apprehended in Hutchinson, Minnesota with the Schaefer pickup. The two had escaped from the Pine Hills School for Boys in Miles City, Montana, two days earlier. Items identified as those taken in the Forsyth, Montana, burglary were found in the truck.

The County Attorney of Rosebud County filed a petition in Youth Court on June 27, 1989, charging the appellant with the theft of Schaefer's truck and the burglary of Jerry's Big Sky Service. On July 26, 1989, the State moved the Youth Court for leave to

2

transfer the burglary charge to District Court. While the appellant resisted the transfer of the burglary charge to the District Court, he failed to file his proposed findings of fact and conclusions of law with respect to that transfer hearing until August 30, 1989. The District Court, on September 20, 1989, granted the State's motion to transfer the burglary charge from Youth Court to the District Court and filed findings of fact, conclusions of law and an order accomplishing this transfer.

The procedural history which then transpired was as follows:

| | |
|---|---|
| October 12, 1989: | The appellant was arraigned in district court. |
| October 20, 1989: | The appellant gave notice of his intent to rely on mental disease or defect as a defense to the charged crime. |
| October 23, 1989: | The court held the required omnibus hearing and set the trial for December 13, 1989. |
| October 27, 1989: | The State gave the appellant the first _Just_ notice of its intent to introduce evidence of other crimes. |
| November 2, 1989: | The appellant moved the court to order a mental examination of him. |
| November 17, 1989: | The State moved to consolidate the appellant's trial with the trial of his brother Charles, a motion the court granted. |
| November 20, 1989: | The court set the consolidated trial for January 23, 1990. |
| November 30, 1989: | The court ordered a mental examination of the appellant. |
| January 6, 1990: | The appellant wrote a letter to Charles Daniels which suggested that the defense attorney had a conflict of interest in representing both brothers in a consolidated trial. The State intercepted the letter and |

informed the court and the defense attorney that a potential conflict of interest existed.

January 16, 1990: The court held a hearing on the potential conflict of interest and noted that the impending trial date would likely be continued.

January 19, 1990: The court appointed separate counsel for Charles Daniels.

February 5, 1990: The court set the trial date for March 6, 1990.

February 20, 1990: Charles Daniels' new attorney moved to sever his trial from that of the appellant.

March 2, 1990: The State moved to continue the trial date because of the unavailability of a witness. The court continued the trial until March 27, 1990.

March 22, 1990: Five days before the trial date, the appellant filed a motion to dismiss the instant case for lack of speedy trial.

March 23, 1990: The court continued the trial date in order to provide the State with an opportunity to respond to the appellant's motion to dismiss.

March 30, 1990: The appellant was released from jail on bail.

April 26, 1990: The court denied the appellant's motion to dismiss.

May 11, 1990: The State filed a second Just notice of its intention to introduce at trial evidence of other crimes, including the theft of Schaefer's pickup truck.

May 15, 1990: Trial commenced in the instant case.

Prior to trial, counsel for the appellant filed a motion in limine to prevent the State from admitting evidence of the appellant's record as a juvenile, including his theft of the pickup

4

truck on the night the burglary occurred. This motion was denied with respect to the theft of the pickup truck, which the court perceived as part of the res gestae of the burglary. At trial, three witnesses called by the State offered evidence and testified concerning possible participation by the appellant in other crimes. Gerald Schaefer testified that his truck had a value in excess of $300. Rosebud County Sheriff's Deputy Charles Skillen corroborated Mr. Schaefer's testimony that someone had stolen Schaefer's truck at approximately the same time as the burglary at Jerry's Big Sky Service. Deputy Skillen further testified that the authorities found the pickup truck in Hutchinson, Minnesota. However, the court did not allow Skillen to testify specifically that the appellant and his brother Charles were in possession of the vehicle at the time the police recovered it in Minnesota. All of this testimony went to the chain of custody of the evidence taken from the stolen pickup truck.

In addition to the above testimony, appellant's brother, Charles, testified for the State and offered testimony regarding the theft of the pickup truck and other crimes committed by the appellant. Charles claimed that the appellant did not enter Jerry's Big Sky Service, but acted as a lookout during the burglary. Charles' testimony also revealed that he and the appellant had escaped from Pine Hills School for Boys. However, this testimony was stricken and the jury was directed to disregard the reference to the Pine Hills School for Boys.

Upon completion of the State's case-in-chief the appellant moved for a mistrial because of the testimony of Deputy Skillen and

Charles Daniels about possible other crimes committed by the appellant. This motion was denied. The court ruled that the theft of the truck constituted the same transaction as the burglary and that the references to Pine Hills and other burglaries were inadvertent on the part of the witnesses. The jury found the appellant guilty of the offense charged. He now appeals.

Issue one, the speedy trial issue, is complicated principally because there was a transfer from a juvenile to an adult court. The District Court properly applied the law in determining whether the appellant was denied a speedy trial, relying on this Court's opinion in State v. Palmer (1986), 223 Mont. 25, 27, 723 P.2d 956, 958. In Palmer we noted:

> Palmer first contends that he was denied his right to a speedy trial. Any person accused of a crime is guaranteed the right to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment. Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. The right to a speedy trial is also guaranteed by Article II, § 24 of the 1972 Montana Constitution. The test to be applied to determine whether an accused's right to a speedy trial has been violated was first set forth in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. This Court applied and stated the Barker test in State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-64 as follows:
>
>> These cases involve a sensitive balancing of four factors, in which the conduct of the prosecution and the defendant are weighed in determining whether there has been a denial of the right to a speedy trial. The four factors to be evaluated and balanced are:
>>
>> (1) Length of delay;
>>
>> (2) Reason for delay;
>>
>> (3) Assertion of the right by defendant; and
>>
>> (4) Prejudice to the defendant.

This Court has stated that the first of the Barker factors, the length of delay, is the trigger to a speedy trial inquiry. There is no need to examine the latter three factors unless some delay deemed presumptively prejudicial has occurred. State v. Harvey (1979), 184 Mont. 423, 603 P.2d 661.

The United States Supreme Court has determined that the speedy trial clock does not start running until the defendant becomes an "accused" in a criminal proceeding. United States v. Marion (1971), 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, 474.

The appellant claims that the time used to figure the length of the delay begins to run on the date he was initially arrested and brought back to Montana from Minnesota, June 19, 1989, or at least from the date the original petition for a hearing was filed in the Youth Court, June 27, 1989. Relying on Marion, the State claims that the appellant only became an "accused" for purposes of the criminal speedy trial computation when the information was filed in District Court.

We note here that while the State alleged that the appellant did not become a "criminal defendant" subject to the jurisdiction of the District Court until September 26, 1989, he went through the civil Youth Court proceedings for a period of time previous to that date. The trial court started the clock when the appellant became an "accused" in the civil Youth Court proceeding on June 27, 1989. The court noted, however, that if the youth resists the motion to transfer to the adult court, that resistance ought to be considered when determining the reasons for the delay and the amount of the delay, if any, which can be charged to him. We agree with the District Court.

7

The court determined that the total amount of delay in this case was 322 days. That is sufficient to trigger consideration of the remaining Barker factors.

The period from June 27, 1989, to August 7, 1989, is attributable to the State as institutional delay. The court found that the period from August 7, 1989, to August 30, 1989, was attributed to the appellant in that he resisted transfer to the District Court but did not file his proposed findings with respect to such hearing until August 30, 1989.

The period from August 30, 1989, to December 13, 1989, was charged to the State. There is no indication of intentional delay on the State's part. The delay is weighed accordingly.

The court found that the period from December 13, 1989, to January 23, 1990, was chargeable to the appellant in that the appellant filed a motion for mental examination on November 2, 1989, but failed to provide the court with either a brief or a proposed order as required by the court until November 30, 1989. By that date, it was apparent to the court and to the State that no written report of the mental examination could be had prior to the December 13, 1989, trial date. The court continued the matter to the next available court date, January 23, 1990, on the State's motion. The court stated this motion should have been made by defense counsel but the State had acted in the absence of affirmative action by defense counsel. The defense did not object and acquiesced in the continuance and the 41 days were therefore attributed to the appellant.

On November 17, 1989, the court granted the State's motion to

consolidate this case with the charges against appellant's brother Charles Daniels. Defense counsel, who also represented the brother, did not object to the consolidation or raise the issue of a conflict of interest. Thereafter, law enforcement officers intercepted a letter from the appellant to his brother Charles Daniels, in which appellant indicated his position that Charles had committed the burglary while appellant was incapacitated by "alcoholic beverages." The letter indicated that the appellant knew the police would intercept it. The District Court stated that:

> The court can only conclude that either the defendant or his brother told defense counsel this story early on, or that they hid this fact from him. Defense counsel either knew or should have known, that the defendant's defense was to include implicating his brother in the companion case. This is a clear conflict of interest situation, which, when it became known to the court, was promptly rectified by appointment of other counsel for the defendant's brother. Counsel for the defendant's brother promptly moved to sever the trials and, after a hearing, the court granted the motion to sever the trials. If the defendant's proposition (that he was asleep while his brother did the crime) were true, this defendant's counsel should have been the one to file the motion to sever. Indeed, he should have fought the consolidation of the two cases, because the defense counsel was relying on the testimony of a co-defendant which would be exculpatory to the defendant, but necessarily implicate the co-defendant brother in the commission of the offense. When the court questioned defense counsel about this, defense counsel stated that he expected to request the court to grant the co-defendant use immunity in order to obtain his testimony at trial. In a consolidated trial, however, the court cannot force a co-defendant to testify by granting immunity, because the co-defendant would be testifying in front of the very jury charged with determining his guilt or innocence. Therefore, although it was the co-defendant's counsel who brought the motion to sever, it was actually this defendant's counsel who should have fought against consolidation in the first place, or, if he were somehow unaware of the conflict at that point, he should have moved to sever and for the appointment of other counsel as soon as he became aware. Of course, if defendant's proposition that his

brother did the crime while he slept is not true, then the court would have to conclude that the defendant knowingly leaked the information to the police in order to create a conflict situation and delay the trial. In either event, the State cannot be chargeable for motions which would have been unnecessary except for the failure of the defendant and his counsel to appropriately communicate or appropriately act on those communications. Therefore, defendant is chargeable with the delay caused by those motions from January 23, 1990 to March 6, 1990, another 42 days.

We conclude that this delay was properly charged to appellant.

The State moved to continue the March 6, 1990, trial date due to unavailability of an out-of-state witness. The period from March 6, 1990, to the next scheduled trial date of March 27, 1990, is therefore charged to the State.

The final delay charged to appellant occurred after the defense's March 22, 1990, motion to dismiss for failure to prosecute. This motion was made two business days prior to the scheduled trial date. The court continued the trial date in order to allow the county attorney to respond and itself time to decide the motion, resulting in a 30-day delay which was attributable to the defense. The trial date was then reset to May 15, 1990.

The net result is that 186 days of the delay in bringing appellant to trial were chargeable to the State. Other than the 21-day delay in March due to unavailability of a witness, the reasons for the delay attributable to the State were institutional. Although appellant's March 22, 1990, assertion of his right to a speedy trial qualifies as one made in a timely manner, we conclude that the delay was not prejudicial. At the time of his arrest, appellant was already under a commitment to the Pine Hills School for Boys. As the District Court noted, appellant was moved to the

Rosebud County Jail at the request of the Pine Hills administration, who indicated that appellant had escaped from their institution on numerous occasions and that they could no longer hold him there. Appellant would have been confined for the entire period prior to his trial because of previous unrelated Youth Court actions. Further, there is nothing to indicate that the defense was in any way impaired by the delay in trying appellant. On balancing the factors set forth in Barker, we conclude that the District Court was correct in ruling that appellant was not denied his right to a speedy trial.

The second issue on appeal relates to the evidence presented at trial of past crimes and past criminal conduct charged in Youth Court. These references were made by Detective Skillen and by appellant's brother.

Skillen's reference to Pine Hills came as part of his testimony establishing a chain of custody for an exhibit seized in Minnesota and given to Pine Hills employees who retrieved appellant from that state. Rule 404, M.R.Evid., does not prohibit evidence of other crimes unless it is offered to prove the character of a person to show that he acted in conformity therewith. Additionally, we hold that the passing reference that an employee of Pine Hills had brought the exhibit back from Hutchinson, Minnesota, did not violate the confidentiality provisions of §§ 41-5-601 and -602, MCA.

Charles Daniels, who had entered into a plea bargain with the State, was clearly a difficult witness for the State to control. His references to his brother's juvenile record were not solicited

by the State's questions. Further, the court instructed the jury to consider such evidence only to establish proof of motive, opportunity, plan, knowledge, identity, or absence of mistake or accident. We conclude that under these circumstances the testimony of Charles Daniels is not grounds for reversal of appellant's conviction.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12