FILED

08/16/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0391

DA 15-0391

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 195

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

RODERICK LEE BUTTERFLY,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 14-0711
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Jacquelyn M. Hughes, Hughes Law, P.L.L.C., Billings, Montana

       For Appellee:

           Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

           Scott Twito, Yellowstone County Attorney, Mary Leffers Barry, Deputy
County Attorney, Billings, Montana

                Submitted on Briefs:  July 20, 2016

                       Decided:  August 16, 2016

Filed:

_____
                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Third Judicial District Court dismissed Powell County escape charges against Roderick Lee Butterfly when the parties agreed to venue in Yellowstone County. After almost seven months, the State re-filed the charges in Yellowstone County. The principal dispute in this appeal is whether that time should count in analyzing Butterfly's speedy trial claim. The District Court ruled that the speedy trial clock did not start running at all until the Yellowstone County charges were filed. Although we count the time somewhat differently, we agree that Butterfly was not denied a speedy trial. We affirm the denial of his motion to dismiss.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On October 10, 2013, Butterfly failed to return to the Billings Pre-Release Center as scheduled. He was charged with escape in violation of § 45-7-306, MCA, the following day in Powell County. Butterfly was arrested in Glacier County and was transferred to Montana State Prison (MSP). Butterfly objected to the Powell County venue, asserting that he should have been charged in Yellowstone County where the alleged offense took place. The State stipulated that venue was proper in Yellowstone County.

¶3 The State then moved to dismiss the escape charge without prejudice based on the parties' stipulation of proper venue. The Powell County District Court granted the State's motion and dismissed the case without prejudice on February 11, 2014. Nearly seven months later, on September 8, 2014, the State filed the escape charges in

2

Yellowstone County. Butterfly was transferred from MSP to the Yellowstone County Detention Facility for prosecution. Trial was set for February 9, 2015.

¶4 Before trial, Butterfly filed a motion to dismiss the case for lack of speedy trial, arguing that 445 days would have passed by the time he appeared for trial. Butterfly asserted that his right to speedy trial had attached upon his initial appearance on the Powell County charge and continued throughout the charge's dismissal and its pending re-filing in Yellowstone County. Butterfly attributed the excessive delay to the State and claimed that he had suffered prejudice because of it.

¶5 Following an evidentiary hearing, the District Court denied Butterfly's motion to dismiss. It concluded that Butterfly's right to a speedy trial had not attached until the charges were re-filed in Yellowstone County—155 days before trial. The court also analyzed the alleged speedy trial violation under the factors articulated in *State v. Ariegwe*, 2007 MT 204, ¶¶ 106-112, 338 Mont. 442, 167 P.3d 815, and concluded that there was "insufficient prejudice" to Butterfly to constitute a speedy trial violation. Butterfly later pleaded guilty to the escape charge, reserving the right to appeal the speedy trial issue.

**STANDARD OF REVIEW**

¶6 A speedy trial violation presents a question of constitutional law that we review de novo to determine whether the court correctly interpreted and applied the law. *State v. Zimmerman*, 2014 MT 173, ¶ 11, 375 Mont. 374, 328 P.3d 1132 (citing *Ariegwe*, ¶ 119). We review the court's underlying factual findings for clear error. *Zimmerman*, ¶ 11.

3

**DISCUSSION**

¶7    *Did the District Court err in denying Butterfly's motion to dismiss for lack of a speedy trial?*

¶8    The Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee every accused person the right to a speedy trial. *Zimmerman*, ¶ 12. When an accused claims that right has been violated, we consider (1) the length of the delay, (2) the reasons for the delay, (3) the accused's responses to the delay, and (4) prejudice to the accused as a result of the delay. *Zimmerman*, ¶ 12. We balance these factors "with any other relevant circumstances to determine whether the right to a speedy trial has been violated." *State v. Stops*, 2013 MT 131, ¶ 19, 370 Mont. 226, 301 P.3d 811. "[E]ach factor's significance will vary from case to case," and "a given factor may outweigh all of the others in one case but be of little consequence in another." *Ariegwe*, ¶ 105.

*(1) Length of the Delay*

¶9    We determine initially whether the length of the delay is at least 200 days, "which is the trigger date for conducting the four-factor balancing test." *Zimmerman*, ¶ 13. In the present case, the District Court found that Butterfly "first became an accused on September 8, 2014, the date [he] was charged with Escape in Yellowstone County." The interval between the Yellowstone County filing and trial was 155 days. The court concluded, "Because the interval between the accusation and the trial is less than 200 days it does not trigger any analysis under the four [*Ariegwe*] factors or the balancing of those factors."

4

¶10     Butterfly argues that the District Court erred in determining that his speedy trial right did not attach until he was charged in Yellowstone County. Butterfly contends that "the length of delay runs from the time of accusation" and "as soon as an individual is subjected to proceedings for an offense." Butterfly claims that this Court "has not specifically addressed when the speedy trial clock starts running if a charge is filed, dismissed and subsequently re-filed." He relies on *State v. Daniels*, 248 Mont. 343, 811 P.2d 1286 (1991), in which we concluded that a defendant's right to a speedy trial attached upon a petition charging the defendant for burglary in youth court despite the charge being later transferred to district court. *Daniels*, 248 Mont. at 349, 811 P.2d at 1289. Butterfly argues that, "like *Daniels*, [he] was subject to criminal proceedings regarding exactly the same charge for exactly the same conduct a full year before the [information] was filed in Yellowstone County."

¶11     The State agrees that the District Court erred in its determination that the speedy trial right attached only when the charges were filed in Yellowstone County. Relying on *United States v. MacDonald*, 456 U.S. 1, 102 S. Ct. 1497 (1982), however, the State argues that "the speedy trial clock stops running while the charges are dismissed." The State maintains that the speedy trial clock started running when the charge was filed in Powell County, stopped when the charge was dismissed, and began running again when the charge was re-filed in Yellowstone County. The State contends that *Daniels* is distinguishable "because Daniels was continuously subject to charges in either the youth court or the district court." Here, in contrast, "[t]here was not a charge pending against

5

Butterfly from the time the charge was dismissed in Powell County until he was charged in Yellowstone County."

¶12    Butterfly attacks the State's reliance on *MacDonald* because it dealt with an arrest on a military investigation and "there is a question whether a military investigation constitutes a formal charging for speedy trial issues."  Butterfly points out the *MacDonald* Court's acknowledgment that in *United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976), the speedy trial clock did not stop between the time charges were dismissed in one district and subsequently re-filed in another district.  He contends that the factual scenario in *Avalos* is more applicable to his case because he was not in the same position he would have been in a pre-filing investigation.  Because of the escape charge "hanging over his head," Butterfly contends that he "was not free to go about discharging his other sentence."

¶13    The right to a speedy trial is intended to

> minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*MacDonald*, 456 U.S. at 8, 102 S. Ct. at  1502.

¶14    In *MacDonald,* a military physician was accused of committing murder on a military base.  The Army charged MacDonald with the murders, but dropped the charges after several months and MacDonald was honorably discharged.  *MacDonald*, 456 U.S. at 4-5, 102 S. Ct at 1500.  Four years later, the government obtained an indictment in federal district court charging MacDonald with murder.  MacDonald claimed that the

6

delay violated his Sixth Amendment right to a speedy trial and the Fourth Circuit agreed. The United States Supreme Court reversed. *MacDonald*, 456 U.S. at 11, 102 S. Ct. at 1503. The Court concluded that the speedy trial guarantee did not attach to the time period after dismissal of the military charges and before the civil indictment. *MacDonald*, 456 U.S. at 7-8, 102 S. Ct. at 1501-02. The Court reasoned that during that time there was no pretrial incarceration, no impairment of liberty associated with being released on bail, and no "disruption of life caused by arrest and the presence of unresolved criminal charges." *MacDonald*, 456 U.S. at 8, 102 S. Ct. at 1502. The Court stated, "Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation." *MacDonald*, 456 U.S. at 9, 102 S. Ct. at 1502.

¶15     As Butterfly points out, the *MacDonald* Court noted that the Fifth Circuit had "reached a seemingly contrary result" in *Avalos* by counting the time between indictments. *MacDonald*, 456 U.S. at 7 n.7, 102 S. Ct. at 1501 n.7. The Supreme Court noted the "unusual" circumstances in that case, in which "the Government dismissed charges pending in one district in order to prosecute the defendants on those same charges in another district." *MacDonald*, 456 U.S. at 7 n.7, 102 S. Ct. at 1501 n.7. The *Avalos* court concluded that the defendants became "accused persons" when the government issued the original warrants for their arrest. *Avalos*, 541 F.2d at 1108. The Fifth Circuit stated, "That [one defendant] was never incarcerated and [the other defendant] was imprisoned for a relatively short period does not expunge the public

7

accusation." *Avalos*, 541 F.2d at 1108. The court concluded that because the defendants' initial arrest "form[ed] the basis of the conviction under review," the right to a speedy trial attached on the date of the initial arrests. *Avalos*, 541 F.2d at 1109.

¶16 Although not cited by either party, this Court has addressed when the speedy trial clock starts running if a charge is filed, dismissed, and subsequently re-filed. Within nine months of the *MacDonald* decision, this Court decided *State v. Bailey*, 201 Mont. 473, 655 P.2d 494 (1982). Bailey was arrested and charged with the felony offense of attempted sale of dangerous drugs. The trial court dismissed the charges because the State had not filed the information within thirty days of the defendant's waiver of a preliminary hearing. *Bailey*, 201 Mont. at 475, 655 P.2d at 495. *See* § 46-11-203, MCA. After two unsuccessful attempts, the State later filed a new information charging Bailey with the same offense. *Bailey*, 201 Mont. at 475, 655 P.2d at 496. We held that the time between dismissal of the first information and filing of the second should be counted in the speedy trial calculation. *Bailey*, 201 Mont. at 477-78, 655 P.2d at 497. "Being an accused is all that is required for the right to speedy trial to attach." *Bailey*, 201 Mont. at 477, 655 P.2d at 497 (citing *State v. Larson*, 191 Mont. 257, 261, 623 P.2d 954, 957 (1981)). We distinguished *MacDonald*. Unlike MacDonald, we reasoned, "Despite no formal charges pending, it is clear from the record [Bailey] is an accused, because . . . he is in a similar position to an arrested person due to the State's continued efforts to charge him during the interim between the first and second information." *Bailey*, 201 Mont. at 478, 655 P.2d at 497.

¶17 The Ninth Circuit arrived at a very similar conclusion in *United States v. Loud Hawk*, 741 F.2d 1184 (9th Cir. 1984) (hereafter *Loud Hawk I*), *rev'd by United States v. Loud Hawk*, 474 U.S. 302, 106 S. Ct. 648 (1986) (hereafter *Loud Hawk II*). The *Loud Hawk* trial court dismissed all charges against the defendants on speedy trial grounds because of a seven-and-one-half year delay in bringing them to trial after the government's interlocutory appeals of orders dismissing the charges. *Loud Hawk I*, 741 F.2d at 1187-88. The Ninth Circuit affirmed. *Loud Hawk I*, 741 F.2d at 1194. The court concluded that *MacDonald* was distinguishable. It counted the time period between indictments in the speedy trial analysis because "the government's appeals after dismissal of the indictment bore the indicia and imposed the disabilities of continued, formal public accusation . . . [so that] the defendants remained 'accused' during the periods when the government was appealing the dismissals of their indictment." *Loud Hawk I*, 741 F.2d at 1190.

¶18 On certiorari, the Supreme Court reversed. The Court concluded that the speedy trial clause was inapplicable to the time during which the indictment was dismissed and the defendants were not subject to "actual restraints" on their liberty. *Loud Hawk II*, 474 U.S. at 312, 106 S. Ct. at 654.

> With no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, a citizen suffers no restraints on his liberty and is no longer the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.

9

*Loud Hawk II*, 474 U.S. at 311, 106 S. Ct. at 654 (citing *MacDonald*, 456 U.S. at 9, 102 S. Ct. at 1502) (internal quotation marks omitted). The Court went on to address the defendants' argument that the speedy trial guarantee should apply to the interim period "because the Government's desire to prosecute them was a matter of public record." The Court stated, "Public suspicion . . . is not sufficient to justify the delay in favor of a defendant's speedy trial claim. We find that after the District Court dismissed the indictment against respondents and after respondents were freed without restraint, they were 'in the same position as any other subject of a criminal investigation.'" *Loud Hawk II*, 474 U.S. at 311, 106 S. Ct. at 654 (quoting *MacDonald*, 456 U.S. at 8-9, 102 S. Ct. at 1502).

¶19    *Loud Hawk II* compels us to revisit our decision in *Bailey*. Our analysis distinguishing *MacDonald* in *Bailey* is, for all intents and purposes, identical to the Ninth Circuit's analysis distinguishing *MacDonald* in *Loud Hawk I*. We said that a person who is subject to "public accusation" absent charge or actual restraint is afforded speedy trial protection. *Bailey*, 201 Mont. at 477-78, 655 P.2d at 496-97. *Loud Hawk II* expressly rejected the Ninth Circuit's identical conclusion in *Loud Hawk I*. *Loud Hawk II*, 474 U.S. at 312, 317, 106 S. Ct. at 654, 657.

¶20    *MacDonald* held that "[o]nce charges are dismissed," as the State did here, "the speedy trial guarantee is no longer applicable." *MacDonald*, 456 U.S. at 8, 102 S. Ct. at 1502. *Loud Hawk II* reaffirmed that, "when no indictment is outstanding, only the '*actual* restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular provisions of the speedy trial provision of the Sixth Amendment.'" *Loud*

10

*Hawk II*, 474 U.S. at 310-11, 106 S. Ct. at 653-54 (quoting *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971), and citing *MacDonald*, 456 U.S. at 9, 102 S. Ct. at 1502) (emphasis in original).

¶21    In reversing the Ninth Circuit, *Loud Hawk II* held that a public accusation absent formal charges or actual restraint does not engage protection of the speedy trial clause. *Loud Hawk II*, 474 U.S. at 310-11, 106 S. Ct. at 654.  "The holding in *Loud Hawk* [*II*] is based on drawing a distinguishing line between a citizen against whom charges have been dismissed and one 'who has been arrested and held to answer.'" *United States v. Hayden*, 860 F.2d 1483, 1486 (9th Cir. 1988) (quoting *Loud Hawk II*, 474 U.S. at 311, 106 S. Ct. at 654).  Butterfly's assertion that he remained "an accused" after dismissal of the initial charges is directly contrary to *Loud Hawk II*.  After dismissal, Butterfly was "in the same position as any other subject of a criminal investigation."  *MacDonald*, 456 U.S. at 8-9, 102 S. Ct. at 1502.  That it was well-known that the State would eventually re-file charges against Butterfly "is not legally significant" as applied to the speedy trial clause. *Hayden*, 860 F.2d at 1486 n.3 (citing *Loud Hawk II*, 474 U.S. at 311, 106 S. Ct at 654). True, Butterfly was incarcerated in MSP during the time between the dismissal and re-filing.  But his incarceration was the result of a prior and wholly separate conviction— not of the escape charge.  And, while Butterfly contends that he was adversely affected by the "Escape charge hanging over his head,"

> [t]he Speedy Trial Clause does not purport to protect a defendant from all effects flowing from a delay before trial.  The Clause does not, for example, limit the length of a pre-indictment criminal investigation even though the "the [suspect's] knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life."

*Loud Hawk II*, 474 U.S. at 311-12, 106 S. Ct. at 654 (quoting *MacDonald*, 456 U.S. at 9, 102 S. Ct. at 1502).

¶22   The Supreme Court's unequivocal holding in *Loud Hawk II* compels us to conclude that *Bailey* has been abrogated.  *Bailey*'s holding that a speedy trial right attaches during the time period between dismissal and re-filing of subsequent charges when the accused is under no official restraint is overruled.  Delay while no charges are pending generally is to be measured by due process standards, similar to pre-indictment delay.  *MacDonald*, 456 U.S. at 8, 102 S. Ct. at 1502.[1]

¶23   We hold that the time period from the dismissal of the charge initially filed against Butterfly in Powell County to the filing of the charge in Yellowstone County is not counted for purposes of determining the length of the delay.  We acknowledge that the *MacDonald* Court distinguished *Avalos* because of the "unusual" circumstances in that case.  We agree with the First Circuit, however, that "[t]hat distinction . . . flies in the face of the opinion itself:  *MacDonald* holds that the speedy trial right simply does not attach to one not formally accused."  *United States v. Colombo*, 852 F.2d 19, 24 (1st Cir. 1988).  "MacDonald was as certain of his continuing and public prosecution as is an individual, such as [Butterfly], who believe[d] he [would] be indicted in a different district."  *Colombo*, 852 F.2d at 24 (internal citations omitted).

---

[1]  Although the Supreme Court acknowledged that "delays in bringing the case to trial caused by the Government's interlocutory appeal [brought in bad faith or for dilatory purpose] may be weighed in determining whether a defendant has suffered a violation of his rights to a speedy trial," *Loud Hawk II*, 474 U.S. at 316, 106 S. Ct. at 656, that is not an issue we face here.

¶24 Of note, we have held that the re-filing of charges between justice court and district court restarts the speedy trial clock. In *State v. Topp*, 2003 MT 209, 317 Mont. 59, 75 P.3d 330, Topp was charged with two misdemeanor offenses in justice court. Those charges were dismissed because the State intended to file charges in district court. *Topp*, ¶ 3. A week later, the State charged Topp with a felony, along with the two previously-dismissed misdemeanor charges, in district court. On appeal, Topp argued that the district court erred in denying his motion to dismiss the misdemeanor charges because his speedy trial right had been violated. *Topp*, ¶ 10. We concluded that Topp's argument was "totally without merit" because "[n]o charges were pending" against him after the justice court charges were dismissed and before the charges were re-filed in district court, and "consequently, no speedy trial 'clock' was running." *Topp*, ¶ 10. We applied the same principles in *State v. Case*, 2013 MT 192, 371 Mont. 58, 305 P.3d 812. In *Case*, the facts presented "the other side of the *Topp* coin—the charges against Case were dismissed by the District Court and re-filed in Justice Court." *Case*, ¶ 13. "When the District Court dismissed Case's felony [partner or family member assault] charge, there were no charges pending against Case and thus, no speedy trial clock was running." *Case*, ¶ 13.

¶25 Notwithstanding our decisions in *Topp* and *Case*, the State concedes that the speedy trial clock began running when charges first were filed in Powell County. Consistent with *MacDonald*, we agree. *MacDonald*, 456 U.S. at 7, 102 S. Ct. at 1501. The clock ran until the Powell County charge was dismissed, and started again when the State filed charges in Yellowstone County. The total length of the delay was 277 days—

123 days for the time between the first charge and dismissal, plus 154 days for the time between the second charge and trial. The District Court therefore erred in calculating the length of the delay.[2]

¶26    A delay of 277 days is sufficient to trigger further analysis under the four *Ariegwe* factors. *Zimmerman*, ¶ 13. "[T]he further the delay stretches beyond the trigger date, the stronger the presumption is under Factor Four that the accused has been prejudiced by the delay, and the heavier the State's burden is under Factor Two to provide valid justifications for the delay." *Zimmerman*, ¶ 14 (citing *Ariegwe*, ¶¶ 49, 61). Based on our case law, we conclude that a 77-day delay beyond the 200-day trigger date does not impose on the State a heavy burden to justify the delay. *See Zimmerman*, ¶ 14 (concluding that an 89-day delay beyond the trigger date is "not particularly long and, therefore . . . the State's burdens under Factors Two and Four are relatively low"); *State v. Charlie*, 2010 MT 195, ¶ 50, 357 Mont. 355, 239 P.3d 934 (holding that a 70-day delay beyond the trigger date was not long enough to require the State to "show a particularly compelling justification for the delay").

*(2) Reasons for the Delay*

¶27    Under Factor Two, a court is required to "identify each period of delay in bringing the accused to trial, attribute each period of delay to either the State or the defendant, and then assign appropriate weight to each period of delay based on specific cause and culpability." *Charlie*, ¶ 51 (citations and internal quotation marks omitted). Institutional

---

[2]  We do not address the significance, if any, of the distinction between *Topp* and *Case*, which involved dismissal and re-filing of charges between justice court and district court, and the speedy trial analysis here.

delay, "caused by circumstances largely beyond the control of the prosecutor and the accused, such as overcrowded court dockets[,] is attributable to the State, but weighs less heavily against it than delay caused by bad faith, negligence or lack of diligence." *State v. Couture*, 2010 MT 201, ¶ 72, 357 Mont. 398, 240 P.3d 987 (citing *Ariegwe*, ¶ 68; *State v. Billman*, 2008 MT 326, ¶ 20, 346 Mont. 118, 194 P.3d 58). Because Butterfly's speedy trial right did not attach during the interval between dismissal and re-filing of the charges, we do not identify it as a "period of delay" and will not consider under this factor the State's alleged lack of diligence in re-filing the charges.

¶28 Despite finding less than 200 days of delay, the District Court considered the remaining factors "for purposes of argument." The District Court concluded that the delay between Butterfly's arrest and his assertion of improper venue was institutional delay. The court attributed to Butterfly the delay between the filing of Butterfly's motion and the court's decision to dismiss the case, "as it was triggered by his motion to change venue." The court concluded that the final delay—the time between the charge in Yellowstone County and the day of trial—was institutional delay. The court specifically found that none of those delays were bad faith delays by the State, but were "due to either a lack of diligence by Powell County or simple institutional delay as a result of overcrowded court dockets."

¶29 Butterfly argues that the court erred in attributing part of the pre-dismissal delay to him on the basis that he objected to venue. Butterfly contends, "That the State filed the charges in the wrong venue should not be attributed to Butterfly in any circumstance."

Although he stipulated to Yellowstone County as the proper venue, Butterfly emphasizes that it was the State that filed the motion to dismiss.

¶30 Taking the position that "[a]ll of the delay in this case was institutional," the State argues that "some weight should be given to Butterfly because his objection to venue caused a significant amount of delay." According to the State, had Butterfly not objected to venue in Powell County, he likely "could have been brought to trial much sooner."

¶31 If an offender serving a state prison sentence or commitment to the Department of Corrections is charged with escape, the law expressly allows the State to file the charge in any county in the state, "without objection from the person charged." Section 46-3-110(2), MCA. Because Butterfly had been committed to the Department at the time he walked away from the Billings Pre-Release Center, the State properly charged the case in Powell County. Butterfly, in turn, was within his right under the statute to object to the Powell County venue. Given that both parties followed a procedure expressly contemplated by § 46-3-110(2), MCA, we conclude that the objection to venue and re-filing of escape charges do not by themselves weigh against either party, but are "inherent in the criminal justice system." *Zimmerman*, ¶ 19. The delay in this case was institutional. As such, it is attributable to the State, "but weighs less heavily against it than delay caused by bad faith, negligence or lack of diligence." *Couture*, ¶ 72.

*(3) The Accused's Responses to the Delay*

¶32 Under Factor Three, we evaluate the accused's response to the delay, such as his or her acquiescence in or objection to pretrial delay. *Couture*, ¶ 50. "[T]he issue is not simply the number of times the accused acquiesced or objected[;] [r]ather the focus is on

16

the surrounding circumstances." *Zimmerman*, ¶ 22. We consider the "totality of the accused's responses" to ascertain whether the accused "actually wanted" a speedy trial. *Zimmerman*, ¶ 22.

¶33 The District Court concluded that Butterfly had not waived his constitutional right to a speedy trial at any time during the proceedings. It noted that his objection to venue was "his right" and "in accordance with the Montana statute." The court concluded further that Butterfly had asserted his speedy trial right by filing his motion to dismiss on December 18, 2014. The record supports the District Court's conclusion, and we agree.

*(4) Prejudice to the Accused*

¶34 Under Factor Four, we consider whether the delay prejudiced the accused "in light of the interests that the speedy trial right was designed to protect: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern caused by unresolved criminal charges, and (iii) limiting the possibility that the accused's ability to present an effective defense will be impaired." *Zimmerman*, ¶ 28. Whether pretrial incarceration is oppressive depends on the "particular circumstances," including the duration and conditions of the incarceration. *Couture*, ¶ 56. In assessing an accused's anxiety and concern, this Court focuses on "the ways in which the presence of unresolved charges disrupted the accused's life," keeping in mind that "[a] certain amount of anxiety and concern is inherent in being accused of a crime." *Couture*, ¶ 64. The third interest evaluates issues of evidence, witness reliability, and the accused's ability to present an effective defense. *Ariegwe*, ¶ 98. "[I]n the absence of affirmative proof that the delay

17

has impaired the accused's ability to present an effective defense, impairment must be assessed based on other factors in the analysis." *Ariegwe*, ¶ 100.

¶35 The District Court concluded that Butterfly's pretrial incarceration was not oppressive. The court explained that when Butterfly walked away from the pre-release center, he violated the rules and conditions of his placement there. According to the court, Butterfly's transfer to MSP following his arrest was "a result of the administrative findings that he had violated the rules and conditions of his transfer to the Pre-Release Center." The court observed that, during the pretrial delay, Butterfly "was not in a position to have employment outside of the prison setting [and] was only able to provide child support with his earnings within [MSP]." It reasoned, however, that Butterfly was in MSP as a result of felonies for which he had been convicted that were unrelated to the escape charge. "For the same reasons," it concluded, Butterfly's anxiety and concern were caused "not by the presence of unresolved criminal charges but by the fact that he continues to be incarcerated at [MSP] for underlying felonies." The court determined also that Butterfly's ability to present an effective defense was not impaired by the delay because the allegations in the affidavit and motion for leave to file information are "clear and concise"; Butterfly's "circumstances and status" as of the date of his arrest "are clear"; and whether he returned to the pre-release center as required "is clear." In balancing the factors, the court found that there was "insufficient prejudice" to Butterfly under the "totality of the circumstances." It concluded that his constitutional right to a speedy trial was not violated.

18

¶36    Butterfly maintains that he was prejudiced because he was incarcerated continuously from the time he was arrested to the time he was sentenced.  He argues that he was no longer able to work—as he had in pre-release—towards paying "child support, fines, etc."  He also claims that he "was saddled with paying the costs of assigned counsel and other court surcharges, [which] could have been avoided" had the State filed the charge in Yellowstone County in the first place.

¶37    The State argues that because Butterfly's pretrial incarceration was not caused by the escape charges, "it does not count as prejudice in the speedy trial analysis."  The State argues also that Butterfly "did not demonstrate that he had anxiety and concern about the escape charge" because, even without that charge, he "would have been incarcerated and unable to work outside of the prison."

¶38    We agree that Butterfly's pretrial incarceration was not oppressive.  The District Court correctly concluded that Butterfly's commitment to the Department of Corrections was the result of previous felonies unrelated to the escape charge.  When Butterfly failed to return to the pre-release center as required, he violated its rules and conditions.  Butterfly's transfer to MSP was the result of violating the pre-release center's rules and conditions, not because of the charge itself.  Moreover, Butterfly acknowledges that the conditions he experienced while incarcerated at MSP and the Yellowstone County Detention Facility were those "inherent in jail and prison life."  While Butterfly may have experienced increased anxiety and concern during the time between dismissal and re-filing of the escape charge, we reiterate that his right to a speedy trial had not attached at that time, and we do not consider it in our speedy trial analysis.  Butterfly has not

shown that any concern or anxiety he experienced during the time the speedy trial clock was running was anything more than the "certain amount of anxiety and concern inherent in being accused of a crime." *Zimmerman*, ¶ 32. Finally, Butterfly does not argue that the delay inhibited his ability to present an effective defense. "The impairment of the accused's defense from a speedy trial violation constitutes the most important factor in our prejudice analysis." *State v. Steigelman*, 2013 MT 153, ¶ 29, 370 Mont. 352, 302 P.3d 396 (citing *Doggett v. United States*, 505 U.S. 647, 654, 112 S. Ct. 2686, 2692 (1992)). On this record, and considering the lack of evidence of impairment in light of all other factors, *Ariegwe*, ¶ 100, we conclude that Butterfly was not prejudiced by the delay.

¶39 We hold that the delay in this case does not establish a constitutional speedy trial violation. Our conclusion comes after balancing the four factors in the analysis. Although the institutional delay under Factor One weighs against the State, the extent to which the delay went beyond the trigger date in Factor Two weighs in favor of the State. While our analysis under Factor Three establishes that Butterfly appropriately asserted his speedy trial right, our analysis under Factor Four decisively confirms that Butterfly did not suffer prejudice sufficient to constitute a violation of that right.

## CONCLUSION

¶40 We differ with the District Court in calculating the length of the delay. We conclude nonetheless that the District Court properly denied Butterfly's motion to dismiss for violation of his right to a speedy trial.

¶41 Affirmed.

20

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE