FILED

03/30/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0202

DA 19-0202

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 80N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOHN SHANNON FINLEY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DC-2017-45
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, James Reavis, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

          Ellen Donohue, Mineral County Attorney, Superior, Montana

          Submitted on Briefs:  February 17, 2021

                  Decided:  March 30, 2021

Filed:

_____
                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 John Shannon Finley appeals an order from the Fourth Judicial District Court, Mineral County, denying his motion for speedy trial. Finley also raises a claim of ineffective assistance of counsel. We affirm.

¶3 In November 2017, an agent with the Missouri River Drug Task Force learned that Finley was renting a car in Helena to pick up drugs. A search warrant was obtained with the purpose of placing a GPS tracker on the rented car. The tracker indicated the car went to Oregon and back, making a few stops along the way. Montana law enforcement obtained warrants and stopped the vehicle near St. Regis, Montana. The vehicle was searched and methamphetamine, marijuana, scales, plastic baggies, and two handguns were recovered. Law enforcement also recovered a cell phone from Finley which contained information about his travel and drug purchases.

¶4 An Information was filed charging Finley with criminal possession of dangerous drugs with intent to distribute, failure to register as a violent offender, and possession of drug paraphernalia. Finley was arrested on November 19, 2017. He remained incarcerated until released on bond on April 5, 2018. He failed to appear at a status hearing on April 25, 2018. The purpose of the status hearing was for the District Court to

2

schedule, if necessary, a trial date, and to otherwise assess the status of the case. When Finley failed to appear, no trial date was scheduled and nothing occurred in the case. A second warrant for Finley's arrest was issued April 30, 2018. Finley's location was unknown until May 20, 2018, when he was arrested in Lake County.

¶5     Following Finley's arrest, the court held a hearing on May 23, 2018. Because Finley had still not contacted his attorney, defense counsel indicated she needed to talk to Finley and review discovery. The court set another hearing for June 13, 2018.

¶6     At the June 13, 2018 hearing, an attorney filling in for Finley's counsel stated Finley wanted to have the case set for trial very soon. The court specifically asked the State whether the Crime Lab reports had been completed, and the State indicated that they had been. Defense counsel, who was standing in, indicated that there were no outstanding issues that needed to be addressed by the court. The court scheduled trial for July 25, 2018.

¶7     On June 25, 2018, the State filed a motion to vacate the jury trial scheduled for July 25, 2018, indicating that it had mistakenly told the court the results had been sent to the Crime Lab and the reports were completed. The State represented that the Crime Lab would need several more weeks. The court vacated the trial date and set a scheduling conference for August 8, 2018.

¶8     On July 6, 2018, Finley moved to dismiss the case alleging his right to a speedy trial had been violated. The court held a status hearing on July 16, 2018 and set trial for August 27, 2018. At the status hearing, the court contacted the Crime Lab and

3

requested it complete the drug test quickly. The Crime Lab agreed and indicated it would have the results in time for trial.

¶9 The District Court held a hearing on Finley's speedy trial motion on August 8, 2018. Finley called his defense investigator, Preston Davis (Davis), who testified he viewed evidence in Helena on May 21, 2018, but the only evidence was two cell phones which had dead batteries, a bag of paraphernalia, and two firearms. Defense reported the status of discovery as follows: Davis had received a report of the GPS tracking data, but not the raw data itself; Davis had not received the Lewis and Clark County police report until June 28, 2018, and thus had not yet interviewed any witnesses; Davis had received the Mineral County Police Report; and Davis had only received part of the evidence relating to the text messages. The court asked defense counsel what was still needed. Finley's counsel filed a memorandum listing dates she inquired about discovery and those items that still had not been received. The District Court explained that Finley's failure to appear caused significant scheduling and discovery problems. When a defendant is absent for a hearing, the court explained, "we don't get status hearings. We don't get updates on discovery. We don't get concerns about discovery." The process begins all over again, explained the court, when a defendant shows up again.

¶10 The court held a hearing on August 14, 2018, to resolve discovery issues. After discussion with the State and defense counsel over the status of discovery, the court stated it was going to make sure interviews by defense counsel were scheduled and that the court would manage the case. The court set another status hearing three days later, on

4

August 17, 2018. At this status hearing, it appeared the parties would be prepared to proceed with the August 27, 2018 trial date.

¶11 On August 20, 2018, the District Court issued an order denying Finley's motion to dismiss. The court noted Finley did not report to his counsel after being released on April 5, 2018. The District Court elaborated on Finley's failure to appear, stating, "there are various other repercussions for when a defendant fails to appear. For example, when a defendant fails to appear, no trial date may be set. In this case, Defendant's failure to appear allows other cases to proceed ahead and occupy slots that the Defendant's case could have utilized." The court continued, noting a defendant's failure to appear exacerbates other delays in the processing of a criminal case. The District Court indicated Finley's counsel did not notify it of the discovery issues. The court held Finley's right to a speedy trial was not violated.

¶12 Trial was held on August 27, 2018. Finley moved to exclude evidence obtained from the warrant contending the agent's information was from an unreliable and inaccurate source. The court denied the motion. After the jury found Finley guilty, Finley filed a motion for a new trial and requested the court reconsider the denial of his motion to exclude evidence obtained from the GPS tracker. Defense counsel maintained there was newly discovered evidence because he had an investigator's interview with one of the informants in the search warrant application. Defense counsel did not ask for an evidentiary hearing on the posttrial motion. The District Court concluded the newly discovered evidence was cumulative and otherwise independently verified by law

enforcement, and that the search warrant was supported by other evidence. The District Court denied Finley's posttrial motions.

¶13 Finley appeals arguing his speedy trial right was violated and that he received ineffective assistance of counsel because counsel failed to request an evidentiary hearing on a posttrial motion.

¶14 A speedy trial violation presents a question of constitutional law, which this Court reviews de novo to determine whether the court correctly interpreted and applied the law. *State v. Chambers*, 2020 MT 271, ¶ 6, 402 Mont. 25, 474 P.3d 1268 (citing State *v. Stewart*, 2017 MT 32, ¶ 6, 386 Mont. 315, 389 P.3d 1009; *State v. Butterfly*, 2016 MT 195, ¶ 6, 384 Mont. 287, 377 P.3d 1191). Factual findings underlying a speedy trial analysis are reviewed for clear error. *Chambers*, ¶ 6 (citing *State v. Morsette*, 2013 MT 270, ¶ 12, 372 Mont. 38, 309 P.3d 978; *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815). If the delay between accusation and trial exceeds 200 days, we evaluate a speedy trial claim by balancing four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused. *Chambers*, ¶ 7; *Ariegwe*, ¶¶ 106-111. No one factor is dispositive by itself; the factors must be balanced and the unique facts and circumstances of each case must be considered to determine whether the accused has been denied the right to a speedy trial. *Chambers*, ¶ 7; *Ariegwe*, ¶¶ 105, 112.

¶15 The speedy trial clock begins when a defendant is arrested or formally indicted, or when the State files a complaint or information, whichever comes first. The accused cannot be held responsible for a district court's failure to schedule a trial date, and the

6

accused has no duty to bring themselves to trial. *Ariegwe*, ¶¶ 64, 68. Finley argues the clock began upon his arrest on November 19, 2017. The District Court correctly concluded that the total delay between Finley's arrest and the start of trial was 281 days. This is only 81 days beyond the threshold of 200 days to trigger a speedy trial analysis. Here, some prejudice is presumed, but because of the minimal amount of delay it is relatively low.

¶16 Assignment of weight to each period of delay is based on the specific cause and motive for the delay. *Ariegwe*, ¶ 108. Institutional delay and valid reasons for delay weigh less heavily against the State; however, the more delay caused by the State for "unacceptable" reasons, such as from negligence or bad faith, the more likely the defendant's speedy trial right has been violated. *Ariegwe*, ¶ 109. The 33-day delay caused by the continuation of the July 25, 2018 trial date to the August 27, 2018 trial date is attributable to the State for its delay in submitting the evidence to the Crime Lab. The discovery problems did not cause any delay because of the District Court taking actions to manage the case in time for the August 27, 2018 trial date. Finally, while a defendant cannot be held responsible for a court's failure to schedule a trial, Finley's failure to appear stopped the processing of his case. Once he appeared for an expeditiously set hearing, the court endeavored to quickly move the case along. Here, the majority of the delay is institutional and, importantly, is not particularly long.

¶17 Factor three requires an evaluation of the accused's responses to the delay based on the surrounding circumstances. *Ariegwe*, ¶ 110. Finley asserts that his counsel repeatedly sought test results and inquired about discovery, and the State failed to submit

evidence. However, aside from the test results accounting for 33 days of delay, the discovery disputes did not cause any delay. Moreover, Finley's failure to appear for a hearing where his trial date would be scheduled demonstrates he was not concerned about his speedy trial. He did not appear for this hearing and another one was not scheduled until after he was arrested on a warrant and brought into court. This factor weighs against Finley.

¶18 Prejudice is assessed "in light of the interests which the speedy trial right was designed to protect." *Chambers*, ¶ 14 (citing *Ariegwe*, ¶ 86). The further the delay stretches beyond the trigger date, the stronger the presumption that the accused has been prejudiced by the delay. *Chambers*, ¶ 14 (internal citations omitted). The Court must examine the interests of the defendant, which include: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired because of dimming memories and the loss of exculpatory evidence. *Ariegwe*, ¶ 88.

¶19 The District Court concluded that Finley was in control of the primary reason for his delay, his failure to appear initially, and the consequences resulting from his choice not to appear at a hearing wherein his trial would be scheduled. Finley's incarceration was primarily due to his inability to post bond and then to his absconding during the proceedings. Finley's pretrial incarceration was not unduly prolonged, disruptive, or oppressive. Finley did not testify at the hearing on his speedy trial motion that he had anxiety or concern beyond the normal impact of detention. Finally, there has not been any impairment to Finley's defense as he received discovery prior to his August trial date

8

and there is no indication that witness memories or availability were impaired in any way.

¶20 When the four factors are balanced, we conclude that the majority of the delay was institutional and that, while the delay was long enough to trigger a speedy trial analysis, the delay was minimal. Finley absconded while his case was pending which caused further delay in setting trial dates and assessing the status of discovery. On balance, Finley's speedy trial right was not violated.

¶21 Finley next asserts he received ineffective assistance of counsel when his counsel failed to request an evidentiary hearing on his posttrial motions. Claims for ineffective assistance of counsel are questions of law and fact which this Court reviews de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861. A defendant arguing ineffective assistance of counsel has a burden to demonstrate by a preponderance of the evidence that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Baca v. State*, 2008 MT 371, ¶ 16, 346 Mont. 474, 197 P.3d 948. To establish that the defendant was prejudiced by counsel's deficient performance, a defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052 (1984).

¶22 There is no evidence indicating that counsel's actions were outside the range of reasonable professional assistance, nor is there a reasonable probability that the result would have been different had counsel requested an evidentiary hearing. Here, there are any number of strategic reasons Finley's counsel may not have wanted an evidentiary

hearing where the informant would testify and be cross-examined. Defense counsel may have preferred to rely on the unsworn statements of the informant. Further, any evidence adduced during an evidentiary hearing would have related to issuance of the search warrant and would not have demonstrated prejudice to Finley during his trial. We conclude the record does not support that defense counsel was ineffective and Finley has failed to establish either prong of the *Strickland* test.

¶23 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶24 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE