DA 15-0371

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 305

FILED

11/29/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0371

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JACK DEAN MAYES,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DC 14-146
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Wendy Lee Holton, Attorney at Law, Helena, Montana

      For Appellee:

        Timothy C. Fox, Montana Attorney General, Eileen Joyce, Assistant
Attorney General, Helena, Montana

             Submitted on Briefs:  September 7, 2016

                    Decided:  November 29, 2016

Filed:

_____
                   Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Article II, Section 24, of the Montana Constitution, grants individuals accused of crimes the right to a speedy trial. At issue here is whether the right to a speedy trial is violated when, among other things, an accused is deprived of access to rehabilitation programs he would otherwise attend but for his unduly lengthy incarceration in county jail. After conducting a balancing of the applicable factors, the District Court found no violation. We reverse.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Jack Dean Mayes (Mayes) has an extensive criminal record, including primarily drug offenses and other offenses likely related to drugs. Thus, Mayes was already on parole for a prior felony drug conviction when his parole officer arrested him, searched his home in Butte, and found a syringe containing liquid in a jacket pocket that field tested positive for methamphetamine. On August 7, 2014, the State arrested Mayes and charged him with felony criminal possession of the syringe in violation of § 45-9-102, MCA. Mayes made his initial appearance in Justice Court the next day, where his bond was set at $5,500.

¶3    The State filed an information on August 15, 2014. Mayes pleaded not guilty on August 28, 2014, and an omnibus hearing was held on September 18, 2014. At the omnibus hearing, the District Court set trial for February 9, 2015, 186 days after his arrest. At the time of Mayes' arrest, the State Crime Lab had a substantial backlog of

---

[1]  Mayes also raises on appeal the District Court's failure to credit his period of incarceration with 125 days. Based upon our resolution of the speedy trial issue, it is unnecessary to address Mayes' second issue.

2

cases and notified the State that any analysis would require between seven and nine months to complete. On August 11, 2014, four days after Mayes was arrested, the Sheriff's Office received notification from the State Crime Lab that the contents of the syringe had to be placed into a vial for purposes of analysis. Despite having received such notification, the State waited until November 17, 2014, or 102 days after Mayes' arrest, to submit the substance for testing. There is no dispute that the State controlled the syringe and its contents during this 102 day period. During the hearing on the motion to dismiss, the State conceded that "there's 100 days there that the substance sat in the sheriff's department and didn't get transferred." Ultimately, the State could not explain why submission of the sample languished for nearly three and one-half months.

¶4 Since it appeared the lab would not complete its analysis in time for trial, the State filed a motion on January 20, 2015, to continue the February 9, 2015 trial date. Mayes objected, arguing that the continuance would leave him incarcerated for an excessive amount of time and place the trial date beyond the threshold period of 200 days established in *Ariegwe*.[2] The District Court granted the continuance and reset Mayes' trial for May 19, 2015, which was 285 days after his arrest. On April 2, 2015, Mayes filed a motion to dismiss for speedy trial violations. The State responded and the District Court entertained argument on the motion, ultimately issuing an order denying the motion on May 12, 2015. On May 13, 2015, Mayes pleaded guilty, but reserved the right to appeal the denial of his speedy trial motion. Thereafter, he received a five-year sentence to run concurrently with the sentence for which he was on parole. Mayes

---

[2] *See State v. Ariegwe*, 2007 MT 204, ¶ 41, 338 Mont. 442, 167 P.3d 815.

3

remained incarcerated in county jail from the time of his arrest on August 7, 2014, until he entered his guilty plea on May 13, 2015, a total of 279 days.

¶5      In its order denying Mayes' speedy trial motion, the District Court analyzed each *Ariegwe* factor. The court first acknowledged that the delay was beyond the 200 day threshold that would trigger a speedy trial analysis. In addressing the reasons for the delay, the District Court found the delay between Mayes' arrest and his trial date was attributable to the State for purposes of balancing, but with a lesser degree of culpability. As for the specific delay arising from the State's late submission of the sample to the lab, a delay of approximately 100 days, the court rejected Mayes' argument that this delay was a tactical decision by the State to secure "better evidence." Instead, the court found the delay was institutional, akin to negligence or a lack of diligence, which is the middle tier of the culpability scale in an *Ariegwe* analysis. The District Court recognized that Mayes had timely asserted his interest in a speedy trial by objecting to the State's motion to continue trial, and then by motion on April 2, 2015. With respect to whether the delay caused Mayes prejudice, the court found that Mayes was incarcerated after December 11, 2014 as a result of his parole violation and not because of the new drug charges. Therefore, the court found no prejudice attributable to delay in the case pending before it for the new charges. The court also concluded Mayes had failed to provide sufficient evidence that: (1) the delay caused him aggravated anxiety or concern beyond what any person accused of a crime would face; (2) that Mayes had missed opportunities to participate in DOC treatment and rehabilitation programs; and (3) that Mayes's defense had otherwise been compromised because of the delay.

4

**STANDARD OF REVIEW**

¶6     We review a district court's findings of fact underlying a speedy trial claim for clear error. A court's findings of fact are clearly erroneous when they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. Whether there has been a constitutional violation of the right to speedy trial is reviewed de novo to determine whether the lower court's interpretation and application of the law are correct. *Ariegwe*, ¶ 119.

**DISCUSSION**

¶7     An accused's right to a speedy trial is guaranteed by United States Constitution Amendments Six and Fourteen, and by Article II, Section 24, of the Montana Constitution. A reviewing court must analyze a potential speedy trial violation by balancing four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the accused asserted his right to a speedy trial; and (4) whether prejudice to the accused resulted from the delay. *Ariegwe*, ¶ 20. When balancing the four factors, no single factor is dispositive and each is to be considered under the totality of relevant circumstances. *Ariegwe*, ¶ 112. The speedy trial clock commences once the accused is arrested, a complaint is filed, or an indictment or information is filed. *Ariegwe*, ¶ 42. A reviewing court must first address the length of delay as a threshold matter to determine if a speedy trial claim merits analysis. *Ariegwe*, ¶ 38. A minimum 200 days must elapse between the speedy trial clock's commencement and the date of trial before a speedy trial claim merits consideration. *Ariegwe*, ¶ 41.

*Factor One: The Length of the Delay*

¶8    We consider the extent to which the delay stretches beyond the 200 day trigger date because a presumption of prejudice intensifies as the delay exceeds the trigger date: the greater the excess over the trigger date, the more likely the accused suffered prejudice. *Ariegwe*, ¶ 49.  Here, Mayes was arrested on August 7, 2014 and pleaded guilty on May 13, 2015, a total of 279 days.  This period exceeds the 200 day threshold by 79 days and, as the delay extends, it establishes an intensifying presumption of prejudice in Mayes' favor.  This factor favors Mayes' motion to dismiss.

*Factor Two: The Reason for the Delay*

¶9    A court reviewing a speedy trial claim does not consider in its analysis any action by either the State or the accused which does not postpone the trial date. *Ariegwe*, ¶ 63. The reviewing court must consider the cause and motive, or reason, behind the particular delay. *Ariegwe*, ¶ 67.  Deliberate delays designed to undermine the defense are heavily weighed, while negligent or institutional delays are weighed less heavily. *Ariegwe*, ¶ 68. Institutional delays are those inherent in the criminal justice system, and beyond control of prosecutors. *Ariegwe*, ¶ 68.  Negligence is equated with a lack of diligence in bringing the accused to trial. *Ariegwe*, ¶ 69.

¶10    We have previously recognized that where the State knows the State Crime Lab is significantly backlogged, the failure to inquire about independent lab analysis or other options constitutes a lack of diligence, even when the backlog is due to circumstances beyond the control of the prosecutor. *State v. Velasquez*, 2016 MT 216, ¶¶ 19-20, 384 Mont. 447, 377 P.3d 1235.  In *Velasquez*, an accused facing felony drug charges was

incarcerated in Roosevelt County Jail the entire 309 days he awaited trial. Weeks before his first trial date, the State moved for a continuance because the lab analysis of the evidence had not been completed. As here, the State Crime Lab had informed the State that evidentiary samples were backlogged by an estimated nine months. The District Court granted the continuance despite Velasquez' objection that he would be denied his right to a speedy trial. The District Court granted two more continuances to allow for completion of lab results. In denying Velasquez' speedy trial motion, the District Court categorized the delay as institutional, and not attributable to negligence or lack of diligence on the part of the State. *Velasquez*, ¶¶ 1-5. We reversed, concluding that the failure of the State to pursue possible alternatives to testing at the State Crime Lab, coupled with the State's awareness that the lab was backlogged by nine months, constituted a lack of diligence which weighed more heavily against the State and tipped the prejudicial scale in favor of the defendant in the *Ariegwe* analysis. *Velasquez*, ¶¶ 51-53.

¶11　　As in *Velasquez*, the District Court here mischaracterized the prosecution's inaction in submitting the sample as part of "the ordinary time required to initiate and prosecute a felony criminal action." The delay in *Velasquez*—309 days—and the delay here—279 days—both resulted from the State's failure to obtain a lab analysis necessary to prosecute a simple drug possession charge. The focus in both *Velasquez* and here is the State's failure to take affirmative measures to move its case to trial and not the conduct of the lab. Furthermore, here, the delay by the State of 102 days in submitting the sample weighs more heavily against the State than in *Velasquez* because the State was

7

in control of the sample and the timetable for its submission to the lab. Although the delay remains unexplained, we decline to adopt Mayes' position, on this record, that the State's actions amounted to a deliberate bad faith effort to prejudice the defense. However, we cannot characterize the delay as merely a lack of diligence by the State when, all other considerations aside, failing to submit the sample constituted over one-half of the time necessary to trigger a speedy trial inquiry. Indeed, as the United States Supreme Court has cautioned, the speedy trial factors that make up our *Ariegwe* test "have no talismanic qualities." *Ariegwe*, ¶ 101 (citing *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 2193 (1972)). We therefore weigh the reason for the delay heavily against the State, but refrain from concluding that there was a deliberate bad faith delay by the State. It is the State's burden to bring the accused to trial and a defendant has no burden to ensure the State's diligent prosecution of his case. *Ariegwe*, ¶ 64. Such a burden should not be shouldered lightly by the State, especially when there are legitimate institutional delays, such as crowded dockets and availability of witnesses, which must be accounted for. Here, the record is devoid of any explanation for the State's failure to submit an evidentiary sample to the lab for 102 days. As such, the reason for the delay weighs heavily against the State.

*Factor Three: The Accused's Response to the Delay*

¶12    *Ariegwe* not only requires that the District Court determine whether the accused timely asserted his right to a speedy trial, but also whether he actually wanted a speedy trial, given the circumstances. *Ariegwe*, ¶¶ 76, 79. We agree with the District Court that Mayes timely asserted his right by objecting to the State's motion to continue and by

filing his motion to dismiss on April 2, 2015. We also agree with the District Court that there is no evidence in the record that the Defendant acquiesced or consented to the delay he endured.

¶13    We are compelled, however, to address the State's argument that Mayes did not actually want a speedy trial because he ultimately pleaded guilty instead of proceeding to trial. Although *Ariegwe* acknowledges that a guilty plea stops the speedy trial clock, an accused's constitutional right to a speedy trial is not compromised by the entry of a guilty plea. *See Ariegwe*, ¶ 43. It would be a mistake to align these distinct constitutional interests—the right to a speedy trial; the relinquishment of the right to trial; and all other constitutional rights attendant to trial—such that relinquishment of one constitutional right would compromise others that are distinguishably different. *Ariegwe* does not anywhere diminish the interests of an accused who chooses to enter a plea instead of proceed to trial, and we decline to do so here. Instead, we find that the Mayes met his burden of asserting his right to speedy trial.

*Factor Four: Prejudice to the Accused*

¶14    Under factor four, the reviewing court must examine the interests of the defendant that the speedy trial right was designed to protect. *Ariegwe*, ¶ 86 (citing *Barker v*, 407 U.S. at 552, 92 S. Ct. at 2193). The United States Supreme Court enumerated these interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired because of dimming memories and the loss of exculpatory evidence. *Ariegwe*, ¶ 88 (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Doggett v. United States*, 505 U.S. 647,

9

654, 112 S. Ct. 2686, 2692 (1992)). A reviewing court may find prejudice to the accused under any one or all of these factors. *Ariegwe*, ¶ 88.

### A. Whether Mayes' pretrial incarceration was oppressive.

¶15    We have repeatedly recognized that the delay that can be tolerated for a relatively simple street crime is considerably less than, for example, a complex conspiracy charge. *Ariegwe*, ¶ 91. In *State v. Billman*, 2008 MT 326, 346 Mont. 118, 194 P.3d 58, Billman was charged with felony DUI and related driving offenses. Billman remained incarcerated and unable to post bail for 278 days while his trial was continued five times because of docket conflicts and a missing witness. *Billman*, ¶¶ 4-6. We recognized that Billman's time incarcerated represented a "considerable amount of delay" and required the State to make a compelling and persuasive showing that this amount of delay did not prejudice him. *Billman*, ¶ 18. Even though Billman did not challenge the conditions of his incarceration, we found that the length of his incarceration in conjunction with the simple charges he faced sufficed to establish prejudice against him. *Billman*, ¶ 41; s*ee also Velasquez*, ¶ 35. Here, Mayes prosecution was also for a simple charge: possession of dangerous drugs. The charge against Mayes had only two elements: (1) possession; (2) of dangerous drugs. Section 45-9-102, MCA (2013). Therefore, the delay, ostensibly for the purpose of establishing the syringe contained a dangerous drug, is less tolerable and weighs against the State.

¶16    Mayes' case additionally raises concerns regarding foregone rehabilitative opportunities, such as drug treatment and counseling, which we have not previously considered in the speedy trial balancing analysis. These considerations are most

appropriately made in the context of whether the pretrial incarceration has been oppressive. The District Court determined that, as of Mayes' December 11, 2015 parole hearing, Mayes' incarceration was due to his parole violation and not the pendency of the new drug charges. On that basis, the court concluded that it "cannot find that the Defendant's pretrial incarceration has been oppressive under the circumstances. He was subject to continued custody regardless of the fact that the original trial date was vacated."

¶17 We disagree with both the court's finding of fact and its application of the law when it determined Mayes was not prejudiced because he was incarcerated pursuant to a parole violation. The record establishes that Mayes would not receive a disposition on his parole violation while the new charges in the instant proceedings remained unresolved. At Mayes' probable cause hearing for his parole violation, held the day before he met with the parole board, Mayes' parole officer advised, "[a]ny sanction I would impose, would be determined by . . . the outcome of those pending charges. . . . [B]asically what I am telling you [Mayes] is that you're stuck here [in Butte-Silver Bow county jail] until those [charges] are adjudicated." The record further establishes that Mayes was prescreened and accepted for Connections Corrections, followed by pre-release, but that such a placement could not occur until resolution of the new possession charges. Similarly, Mayes was an appropriate referral for NEXUS, but any placement would not occur until resolution of the new felony charges. Parole Officer Martin testified at the speedy trial hearing and explained Mayes' situation succinctly:

Q: Now going to the December 11 [parole board] hearing, what was the

result of that hearing?

A:  There was probable cause found by the Hearings Officer Kelley that the [parole] violations had occurred, and he was ordered to be returned back before the Board of Pardons and Parole.

.  .  .

Q:  Now, from August 7, the date of his arrest, until currently, has he been able to apply for or enter any programs that the DOC offers?

A: I had him pre-screened for Connections prior to his arrest on August 7. And then after his arrest. . , he was pre-screened at the Great Falls Pre-Release Center and accepted.

Q:  Okay.  But he couldn't go to those programs because of the August 7 arrest?

A:  Yes, sir.

Q:  Okay.  While he's been in the county jail, could he apply for any other DOC type of programs?

A:  Yes.

Q:  Like what?

A:  We could screen him for NEXUS, pre-releases and that, just getting that process taken care of for the outcome of the pending charges.

Q:  So even though he may have applied for the programs, he couldn't go until these charges are resolved?

A:  No.  No.  He could not go.  He's not eligible for community placement until the felony charges are adjudicated or dismissed.

¶18    Mayes has established that he was prescreened and accepted for at least one rehabilitative drug program, followed by a community placement, which he could have participated in but for his incarceration in the county jail on new drug charges.  We further observe that the sentence Mayes received was imposed concurrently to the

12

sentence he received his at parole hearing and for which his parole officer recommended participation in a drug rehabilitation program followed by community placement. It appears counterproductive, to say the least, to delay drug rehabilitation treatment for an offender obviously suffering from a drug addiction in order to test the substance in a syringe recovered from his person—submission of which did not occur for 102 days, or nearly twice as long as it would take for the offender to complete treatment at Connection Corrections.

¶19    We consider efforts to rehabilitate drug addiction as important, and opportunities to receive treatment are frequently limited, requiring many circumstances to align to effectuate the treatment opportunity. Here, the record established that Mayes had such an opportunity; he had been prescreened and could be placed in a drug rehabilitation program. However, the pending possession charges in the instant proceedings prevented him from doing so. In contrast to the speculative prospects for rehabilitation presented in *State v. Betterman*, 2015 MT 39, 378 Mont. 182, 342 P.3d 971, *aff'd*, *Betterman v. Mont*ana, ___U.S.___,136 S. Ct. 1609 (2016), Mayes has met his burden of establishing the availability and placement into drug rehabilitation programs which he was unable to realize because of the pending new drug charges. Thus, we consider the inability of Mayes to participate in drug rehabilitation as a consideration of oppressive pretrial delay and weigh it against the state.

*B. Whether Mayes' anxiety and concern was caused by or aggravated by the delay.*

¶20     "[T]he crucial question here is whether the delay in bringing the accused to trial has unduly prolonged the disruption of his or her life or aggravated the anxiety and concern that are inherent in being accused of a crime." *Ariegwe*, ¶ 97 (citing *United States v. Macdonald*, 456 U.S. 1, 8, 102 S. Ct. 1497, 1502 (1982)).  In evaluating this interest, the court may infer from evidence that the unresolved charges disrupted the accused's life, causing him anxiety and concern that led to prejudice.  *Ariegwe*, ¶ 97.  But a certain amount of disruption when facing criminal charges is to be expected, and finding prejudice from anxiety and concern hinges on duration and intensity.  *Ariegwe*, ¶ 97.

¶21     Here, the record shows that Mayes alleged anxiety and concern.  Mayes alleged that he suffered financially from his incarceration in that he was not employed, and was not able to graduate from college on time with his peers.  He alleged that he suffered depression and emotional impairment as the result of his extended confinement.  Although Mayes alleged a number of ways he has suffered anxiety and concern, he failed to present any evidence to the District Court to support his allegations.  *Ariegwe* permits a reviewing court to infer from evidence that unresolved charges have disrupted the accused's life, but Mayes failed to set forth any additional evidence for review under this factor.  While Mayes' testimony alone of his anxiety and concern is evidence for the court to consider, we attribute little, if any, prejudice to Mayes on this factor.

14

*C. Whether the accused's defense was impaired.*

¶22    Preventing impairment of the defense remains the most serious interest the speedy trial right was designed to protect. *Ariegwe*, ¶ 98. Even though this interest focuses on specific aspects of potential impairment, such as witness reliability and evidence spoliation, an accused who fails to set forth any evidence of specific impairment is not precluded from a finding of prejudice. *Ariegwe*, ¶¶ 99-100. Rather, a lack of evidence showing impairment allows the court to focus on other speedy trial factors to determine whether the pretrial delay has prejudiced the defense. *Billman*, ¶ 47. The extent to which an accused may rely on the presumption of prejudice depends on the extent to which the delay exceeds the 200 day trigger date. *Ariegwe*, ¶¶ 51, 151.

¶23    In *Ariegwe*, we concluded that Ariegwe's delay of 208 days past the trigger date (408 days total) required the State to make a compelling justification for the delay, and a persuasive showing that he had not been prejudiced by the delay. *Ariegwe*, ¶¶ 123, 151. However, we further concluded that the extent of that delay, substantial as it was, did not completely absolve Ariegwe from showing at least *some* particularized prejudice. *Ariegwe*, ¶ 151. By contrast, we concluded in *Velasquez* that a record with only a modicum of evidence showing an impaired defense would suffice to adequately support presumptive prejudice and direct a reviewing court to analyze the other factors. *Velasquez*, ¶¶ 48-50. Similarly, in *Billman*, we acknowledged the accused's failure to submit affirmative proof of prejudice would not be fatal to the defendant's speedy trial claim and would instead focus our attention on other factors. *Billman*, ¶ 47; s*ee also State v. Butterfly*, 2016 MT 195, ¶ 38, 384 Mont. 287, 377 P.3d 1191 ("[C]onsidering the

15

lack of evidence of impairment in light of all other factors, we conclude Butterfly was not prejudiced by the delay."); *State v. Redlich*, 2014 MT 55, ¶ 53, 374 Mont. 135, 321 P.3d 82 (affirming the District Court's ruling that there was no prejudice to the defendant where he alleged a defense impairment, but provided no detail how exactly his defense was hindered); *State v. Zimmerman*, 2014 MT 173, ¶ 37, 375 Mont. 374, 328 P.3d 1132 (concluding that there was no prejudice despite the defendant's mere allegation of a defense impairment where witness memories were marginally dimmed by the erosion of time, but events were easily reconstructed by video evidence).

¶24 Here, the District Court found that Mayes failed to identify any evidence showing that potential evidence was lost, that witnesses have become unavailable, or that Mayes demanded an independent examination of the evidence. Indeed, the court found, "the Defendant has not alleged or shown any specific limitation on his ability to present an effective defense." We agree with the District Court. Although "consideration of prejudice is not limited to the specifically demonstrable," the complete lack of evidence that the defense was impaired should be considered under the totality of the circumstances. *Ariegwe*, ¶ 151 (quoting *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2692-93). Here, Mayes' inability or unwillingness to substantiate with evidence other than his own allegations some impairment to the defense weighs in favor of the State.

### Balancing the Factors

¶25 Whether the accused was deprived of his right to a speedy trial is determined by the facts of the case and by weighing each of the factors addressed above. *Zimmerman*, ¶ 38. We conclude that the State's failure to submit the lab analysis for 102 days

following Mayes' arrest, while not proven to be in deliberate bad faith, weighed very heavily against the State in the balancing of *Areigwe* factors. These charges were simple and the State's reasons for delay, backlog at the State Crime Lab and an unexplained failure to timely submit the evidence, were insufficient when balanced against rehabilitative opportunities Mayes was unable to participate in as a result of the unresolved drug charges. When we consider the State's reason for the delay, the simplicity and nature of the charges, the prejudice to Mayes by his inability to participate in drug rehabilitation programs and community placement, in conjunction with Mayes' obvious need for treatment, we conclude that Mayes was denied his right to a speedy trial.

¶26 The remedy for violation of a speedy trial is dismissal of the charges. *Betterman*, ¶ 24. We therefore reverse the District Court's denial of Mayes' motion to dismiss and remand for dismissal of the charges.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER

Justice Jim Rice, dissenting.

¶27 The complex and unwieldy *Ariegwe* test can lead to a parsing of the speedy trial inquiry into such minute pieces that it is easy to lose sight of the big picture. Indeed, as the U.S. Supreme Court has cautioned, the speedy trial factors that make up our *Ariegwe*

17

test "have no talismanic qualities." *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193. The big picture we should see here is that the State was ready to try this felony case less than seven months after Mayes' not guilty plea put this case on a track for trial, even with the delays associated with the Crime Lab, and, unlike in *Velasquez*, there was absolutely no impairment to the "most serious" interest to be protected by the speedy trial right—the ability of Mayes to present an effective defense. *Ariegwe*, ¶ 98; *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692. For these and other reasons stated below, I would affirm.

¶28 The situation with the Crime Lab was likewise not the same as in *Velasquez*. There, the 309-day delay was occasioned when the prosecution failed to act "after learning of and 'repeatedly' confirming the nine-month delay" in processing the evidence, but doing nothing in response. *Velasquez*, ¶ 19. Here, after an initial unquantified delay in processing that arose when the Crime Lab advised that it could not accept Mayes' syringe in its original condition, and that the contents would need to be extracted and re-packaged in a different container, the Crime Lab processed the evidence in just four months, providing a report on March 23, 2015—far less time than required in *Velasquez*. Although by then a trial date was not available for another two months (May 19), that delay was not caused by any lack of diligence by the State.

¶29 The Court assesses the State's conduct as lying somewhere between bad faith and lack of diligence, classifying it as not "merely a lack of diligence." Opinion, ¶ 11. This underscores the vague subjectivity inherent in the *Ariegwe* analysis, dealing with, in its own words, "gradations of culpability." *Ariegwe*, ¶ 71. Critically, however, the Court

18

does not explain how this deficiency on the part of the State matters—how Mayes was ultimately prejudiced. Despite any lack of diligence on the part of the State, the Crime Lab produced the evidence in less time than expected, and Mayes' interests did not suffer.

¶30 Unlike the Court, I would credit the District Court's findings of fact on these issues. The District Court rejected Mayes' arguments about bad faith and lack of diligence, finding Mayes "did not offer any evidence to show a lack of diligence on the part of the prosecution. The Defendant did not argue that the State failed to submit its alleged drug evidence to the crime laboratory in a timely manner." Given this lack of evidence and argument in the District Court, and the nature and duration of the delay here as compared to *Velasquez*, I agree with the District Court in not weighing the delay in this case "heavily" against the State, as the Court does. Opinion, ¶ 11.

¶31 The Court also weighs against the State the impact upon Mayes' ability to seek program placement, rejecting the District Court's findings of facts and conclusions of law. Opinion, ¶¶ 16–19. However, the record is clear that, while screened for DOC programs before and after his arrest, Mayes' initial inability to access programs resulted from his *arrest*, on August 7, and continued for that reason *at least* four months, through December 11, when his parole violation hearing (probable cause) was conducted. Even thereafter, Mayes was placed on a "parole hold" and subjected to further DOC detention until parole board hearings could be conducted, adding to the delay attributable to his arrest. Although Mayes may then have been able to post bail, he offered no proof that he could or would have done so, especially in light of the "parole hold." As the District

19

Court found, Mayes "was subject to continued custody regardless of the fact that the original trial date was vacated." Further, the District Court found that Mayes' program argument "was not supported by any evidence to identify particular programs at issue or to demonstrate the Defendant's eligibility for such assistance." The Court overturns the District Court's findings on the basis of very thin and, in my view, inconclusive testimony. Opinion, ¶ 17. However, even if, in fact, Mayes sufficiently established his eligibility for programs, any delay in accessing them associated exclusively with the State's delay in this criminal proceeding was minimal, and I agree with the District Court that it was not extensive enough to be considered oppressive. *See State v. Maloney*, 2015 MT 227, ¶ 32, 380 Mont. 244, 354 P.3d 611.

¶32 The Court agrees with the District Court that there was no evidence establishing aggravation of anxiety and concern. Opinion, ¶ 21. Further, it affirms the District Court's finding that Mayes' ability to present an effective defense was not hindered in any way. Opinion, ¶ 24. The Court neglects to recognize the importance of this final factor, which, as cited above, has been generally acknowledged by the U.S. Supreme Court and this Court as the most important consideration of prejudice. *See Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692; *Billman*, ¶¶ 68–69. Thus, it should be accorded significant weight.

¶33 Making these adjustments in the weight to be given to the *Ariegwe* factors, I would conclude that the record demonstrates that the factors do not weigh in Mayes' favor. But beyond that, I believe it more important to recognize that the speedy trial factors are not to be "talismanic" in their effect, especially if they hinder seeing the big

20

picture. The delays that occurred in this case are simply not out of the ordinary for the prosecution of a felony case in Montana. Mayes did not demonstrate significant prejudice. I would affirm.


/S/ JIM RICE


Justice Beth Baker joins in the dissenting Opinion of Justice Rice.

/S/ BETH BAKER