Justice Beth Baker delivered the Opinion of the Court.
***169 ¶ 1 After losing his speedy trial motion, Tyler Jack Snider pleaded guilty to two counts of felony assault with a weapon in violation of § 45-5-213, MCA, in the Fourteenth Judicial District Court, Musselshell County. Snider received concurrent forty-year prison sentences. He raises three issues on appeal:
1. Was Snider entitled to dismissal of all charges for lack of a speedy trial?
2. Did the District Court deny Snider due process of law during sentencing when it admitted a jailhouse informant letter into evidence and stated facts outside the record?
3. Did the court illegally impose multiple court information technology fees?
¶ 2 We affirm on issues one and two and remand to the District Court on issue three, with instructions to strike one of the information technology fees imposed in Snider's sentence.
*271 PROCEDURAL AND FACTUAL BACKGROUND
¶ 3 On February 15, 2015, Fallon McCleary was hanging out with Robert Lacroix and Cassandra Hafferman at Snider's house before Snider returned home from work.[1] McCleary was four months pregnant at the time with Snider's child. As Hafferman was trying to leave, Snider drove up and blocked her vehicle in. He began yelling at McCleary and Lacroix and accused them of taking his things. Snider has admitted that he was high on methamphetamine at the time. Hafferman got out of her vehicle and asked Snider and Lacroix to move ***170 their vehicles so she could leave. As she was returning to her vehicle, she heard a gunshot. When she turned around, she saw Snider holding a handgun. Lacroix had his hands in the air. When Hafferman approached Snider, he pointed the gun at her, but lowered it to the ground when she put her hands up.
¶ 4 McCleary and Lacroix attempted to flee from Snider in Lacroix's vehicle. Snider pursued them and began shooting at them. Law enforcement officers later found McCleary walking along U.S. Highway 87 with a gunshot wound to her left ear. They learned that Lacroix also had suffered a gunshot wound to his arm. After obtaining a search warrant for Lacroix's vehicle, officers found a hole in the base of the window with blood on the driver's door armrest area. They also found a hole through the passenger headrest with blood on the seat at the base of the headrest. At the time of the shootings, Snider was serving a four-year suspended sentence for felony intimidation in DC 10-07 and was out of jail on bond in a proceeding to revoke that suspended sentence.
¶ 5 Snider was taken into custody on February 17, 2015, two days after the shooting. In his briefing before both this Court and the District Court, Snider states that he contacted law enforcement through his counsel on February 17 to inform them he wanted to turn himself in for the shootings and that the sheriff responded to Snider's location and placed him under arrest as a suspect in the shooting. The record shows that on February 17, the State filed a petition to revoke against Snider in DC 10-07 and that the District Court issued an arrest warrant for violation of bail conditions in that case. This warrant was served on Snider the morning of February 18 at the Musselshell County Sheriff's Office, where Snider was being held. On March 2, 2015, the court revoked Snider's suspended sentence in DC 10-07 and imposed a four-year commitment to the Department of Corrections. He was sent to the Montana State Prison ("MSP") on a placement override that found Snider was not appropriate for placement at the Missoula Assessment & Sanction Center ("MASC"), and he remained incarcerated at MSP throughout the proceedings in this case.
¶ 6 The State moved for leave to file an information and filed a supporting affidavit on May 14, 2015, for the offenses in this case. The following week, the court issued an order granting the State leave to file, as well as an arrest warrant. The State filed its information against Snider on May 22, charging Snider with three counts of attempted deliberate homicide, one count of assault with a weapon, and one count of commission of an offense with a dangerous weapon, ***171 a sentence enhancement.
¶ 7 In September 2015, the court issued its scheduling order for the new charges, scheduling a four-day trial to start on February 9, 2016. More than two months later, Snider filed a motion to dismiss the charges because his right to a speedy trial had been violated. His motion did not have any attachments. The State attached to its response a single one-page form from March 2015, granting an override request to send Snider to MSP rather than MASC. At a hearing on the motion, neither party presented any testimony or additional evidence. The District Court denied the motion. It determined that the length of the delay between accusation and the scheduled trial was 263 days, counting from the date the State filed the information. This length of delay triggered the four-factor balancing test. After balancing the factors, the District Court determined that the State *272 had not violated Snider's right to a speedy trial.
¶ 8 The State and Snider entered a plea agreement in which Snider would plead guilty to two amended counts of assault with a weapon and the State would dismiss the remaining charges. Snider reserved his right to appeal the denial of his motion to dismiss. Following a sentencing hearing, the District Court sentenced Snider to two concurrent forty-year prison sentences, with a twenty-year parole restriction.
STANDARDS OF REVIEW
¶ 9 We review factual findings underlying a district court's speedy trial ruling to determine whether those findings are clearly erroneous. State v. Ariegwe , 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. Findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. Ariegwe , ¶ 119. Whether a defendant has been denied a speedy trial is a question of constitutional law that we review de novo to determine whether the district court's interpretation and application of the law are correct. Ariegwe , ¶ 119.
¶ 10 Whether a district court's sentence violated a defendant's constitutional rights is a question of law, which we review de novo. State v. Ferguson , 2005 MT 343, ¶ 99, 330 Mont. 103, 126 P.3d 463.
DISCUSSION
¶ 11 1. Was Snider entitled to dismissal of all charges for lack of a speedy trial?
***172 ¶ 12 Snider argues that the District Court should have dismissed this case for lack of a speedy trial. The State and Snider agree that the delay between accusation and trial was more than 200 days, triggering this Court's established four-factor balancing test. Ariegwe , ¶ 41. The parties disagree, however, about the length of the delay. Snider insists that his right to a speedy trial attached on February 17, 2015, when he was arrested after the shooting. The State argues that the District Court correctly determined that Snider's right to speedy trial did not attach until the State filed an information, charging him with the offenses, on May 22, 2015. Regardless, Snider maintains that the four factors in the balancing test favor him and weigh heavily against the State. He argues that all of the delay was attributable to the State as intentional or negligent delay and institutional delay. Further, he timely invoked his speedy trial right. Finally, he was prejudiced because he suffered oppressive pre-trial incarceration and undue anxiety and concern due to the delay, and the delay impaired his ability to present an effective defense.
¶ 13 The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution both guarantee a criminal defendant the right to a speedy trial. If the delay between accusation and trial exceeds 200 days, we examine alleged speedy trial violations under a four-factor test. Ariegwe , ¶ 41. We consider the length of the delay, the reasons for the delay, the defendant's response to the delay, and the prejudice to the accused as a result of the delay. Ariegwe , ¶ 34. "No one factor is dispositive by itself; rather, the factors are related and must be considered together with such other circumstances as may be relevant." Ariegwe , ¶ 112.
¶ 14 We first consider the length of the delay. While both parties agree that the delay in this case was more than the threshold 200 days, we examine how far the delay surpassed that threshold, because the presumption of prejudice intensifies and the State's burden to justify the delay increases as the delay grows longer. See Ariegwe , ¶ 62.
¶ 15 A defendant's right to a speedy trial attaches on the date that the defendant becomes an "accused." Ariegwe , ¶ 42. A defendant becomes an accused "when a criminal prosecution has begun and extends to those persons who have been formally accused or charged in the course of that prosecution whether that accusation be by arrest, the filing of a complaint, or by indictment or information." Ariegwe , ¶ 42 (quoting *273 State v. Larson , 191 Mont. 257, 261, 623 P.2d 954, 957-58 (1981) ). "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial ***173 provision of the Sixth Amendment." Ariegwe , ¶ 42 (emphasis added) (quoting Dillingham v. United States , 423 U.S. 64, 65, 96 S.Ct. 303, 303-04, 46 L.Ed.2d 205 (1975) (per curiam) ).
¶ 16 Although Snider challenges the timing of his arrest and the issuance of the warrant for bond violations, we cannot agree that Snider was arrested and held to answer a criminal charge for the shootings until the State filed charges against him in May 2015. Even if we were to agree with Snider that his initial arrest was premised on probable cause for his role in the shootings-a premise that Snider failed to support with any testimony or evidence-a brief investigatory arrest does not amount to an arrest for which a defendant is held to answer for a criminal offense. See, e.g. , United States v. Sorrentino , 72 F.3d 294, 297 (2d Cir. 1995) (holding that a brief investigatory arrest did not start the speedy trial clock and explaining that when no charges are outstanding, "only the actual restraints imposed by arrest and holding to answer a criminal charge engage speedy trial protection" (internal quotations omitted) ), overruled in part on other grounds by United States v. Abad , 514 F.3d 271 (2d Cir. 2008). After the issuance of the arrest warrant to revoke Snider's bail, there is no evidence that the State actually was restraining Snider as it prepared to charge him in connection with the shootings. See Cowart v. Hargett , 16 F.3d 642, 645-46 (5th Cir. 1994) (holding that "[a] defendant's speedy trial rights attach only when he is formally charged with a crime or actually restrained in connection with that crime" and "the purpose of the defendant's restraint is in anticipation of formal charging" (internal quotations omitted) ). Importantly, the warrant for his arrest for the bond violations was issued the same day as his arrest, he was served with the warrant the following morning, and when his suspended sentence in DC 10-07 was revoked, he was credited with every day he spent in jail before the revocation. We conclude that Snider's speedy trial right attached when the State filed its information, and we agree with the District Court that the delay between Snider's accusation and scheduled trial was 263 days.
¶ 17 The State does not bear a heavy burden to justify a delay of 263 days. See State v. Butterfly , 2016 MT 195, ¶ 26, 384 Mont. 287, 377 P.3d 1191 (holding that a 277-day delay "does not impose on the State a heavy burden to justify the delay" and citing cases). The District Court determined that neither party's actions or inactions had caused postponement of the trial and considered all of the delay as institutional, which weighs less heavily against the State. Snider argues that the two-month delay between the filing of the information and the State's motion to set his arraignment and transport from MSP
***174 should be considered intentional or negligent delay, because the State failed to make necessary arrangements with MSP for Snider's appearance in a timely manner. Snider has failed to demonstrate clear error in the District Court's finding that all of the delay was institutional, because he has not shown that the State's actions caused his trial to be postponed.
¶ 18 A defendant has no obligation to ensure a case against him is timely prosecuted. See State v. Zimmerman , 2014 MT 173, ¶ 18, 375 Mont. 374, 328 P.3d 1132. But, in reviewing Snider's response to the delay, we consider "the totality of [his] responses to the delay[ ] in bringing him" to trial in order to ascertain whether he "actually wanted a speedy trial." Ariegwe , ¶ 110. Snider brought a timely motion to dismiss for lack of a speedy trial. The District Court found nonetheless that Snider did not appear particularly interested in a speedy trial, noting that Snider did not object to the scheduled trial date until more than two months after it was set. Snider challenges this finding, arguing that the District Court should have weighed this factor more heavily in his favor. Based on the record before us, we cannot say that the District Court clearly erred in its findings. The District Court properly considered the totality of the circumstances.
*274 ¶ 19 Finally, we consider whether the delay prejudiced Snider. In particular, this factor focuses on preventing oppressive pretrial incarceration, minimizing anxiety and concern caused by the presence of unresolved criminal charges, and limiting the possibility that the delay will impair the defendant from presenting an effective defense. Ariegwe , ¶ 111. The presumption of prejudice intensifies as the delay grows longer. Ariegwe , ¶ 62. Because the delay was 263 days-sixty-three days over the triggering delay-the presumption of prejudice in this case is relatively weak.
¶ 20 The District Court found that Snider had been incarcerated due to revocation of his prior sentence before charges in this case were filed. Generally, we do not consider pretrial incarceration resulting from previous unrelated felonies to be oppressive. See Butterfly , ¶ 38. Snider argues that his pretrial incarceration was oppressive, however, because he was being housed on the "high side" of MSP and he was prevented from applying for rehabilitative programs until after the current charges were resolved. But Snider has failed to provide any evidence to support these claims, and his arguments are speculative. Compare State v. Mayes , 2016 MT 305, ¶ 18, 385 Mont. 411, 384 P.3d 102 (holding that pretrial incarceration arising from unrelated convictions was oppressive when the defendant put on evidence that he had been accepted into a treatment program and would have been sent ***175 there if not for his new charges). Similarly, Snider has failed to assert any specific anxiety or concern greater than the anxiety and concern experienced by every defendant accused of serious crimes. Finally, Snider argues that his ability to defend himself was impaired because he was unable to interview McCleary for more than nine months after the incident. He does not make clear, however, how his inability to interview McCleary was caused by the delay. Recall that Snider offered no evidence to support his speedy trial claims.
¶ 21 Generally, a speedy trial claim will fail, "however great the delay, if the government [has] pursued the accused with reasonable diligence and the accused [can] not show specific prejudice to his or her defense as a result of the delay." Ariegwe , ¶ 60 (internal quotations omitted). As observed, sixty-three days beyond the 200-day trigger date is not particularly long. Further, neither factor two nor factor three weighs particularly strongly in Snider's favor: institutional delay does not weigh heavily against the State, and Snider's responses to the delay did not indicate a strong desire for a speedy trial. The presumption of prejudice caused by the delay in this case is relatively weak, and Snider also provided weak showings and no specific evidence on the issue of prejudice. Balancing all four factors, we agree with the District Court that Snider's right to speedy trial was not violated.
¶ 22 2. Did the District Court deny Snider due process of law during sentencing when it admitted a jailhouse informant letter into evidence and stated facts outside the record?
¶ 23 Snider argues that the District Court violated his due process rights when it admitted a jailhouse informant letter into evidence during sentencing. Snider further alleges that the District Court based its sentencing decision on extra-record evidence-such as the District Court's personal interactions with Snider's two children-which was fundamentally unfair.
¶ 24 During sentencing, "[d]ue process requires that an offender be given an opportunity to explain, argue, and rebut any information, including presentencing information, that may lead to a deprivation of life, liberty, or property." Ferguson , ¶ 100. Due process protects a defendant from being sentenced based on misinformation. Ferguson , ¶ 100. It "does not protect against all misinformation-rather, the inquiry turns on whether the sentence was premised on materially false information." Ferguson , ¶ 100 (quoting State v. Mason , 2003 MT 371, ¶ 21, 319 Mont. 117, 82 P.3d 903, overruled in part on other grounds by State v. Herman , 2008 MT 187, 343 Mont. 494, 188 P.3d 978 ). When a sentencing court does not rely "on improper or erroneous information in sentencing a criminal defendant, there is nothing to ***176 correct or rebut and, therefore, the defendant is not entitled to resentencing on due process *275 grounds." Mason , ¶ 21 (internal quotations omitted).
¶ 25 Although the District Court admitted the jailhouse letter into evidence, it did not mention the letter when sentencing Snider-a fact Snider acknowledges. The District Court acknowledged that the letter's admissibility was "a close call," but stated that Snider's objections "go to the weight of the document, and not necessarily its admissibility." Snider's counsel cross-examined the undersheriff about its reliability and authenticity. Through cross-examination, Snider's counsel elicited testimony that the reliability of the letter's author was unknown and that the author wrote the letter in an attempt to be let out of prison in exchange for information. Further, Snider was given an opportunity to testify and rebut any information that was provided in the letter. Snider did not testify, but read a letter to the court. The District Court did not mention the jailhouse letter or its contents again and did not rely on it in either the oral or written reasoning for Snider's sentence. The mere admittance of the letter into evidence, without any indication that the sentence was premised on it, did not violate Snider's due process rights.
¶ 26 Snider also challenges various comments from the District Court as proof that the District Court relied on facts outside the record in imposing the sentence. Snider cites the court's statements about meeting Snider's children and its frustration with sentiment from the community that Snider's victims were less deserving because of their addictions. The record does not indicate, however, that the court based its sentencing decision on any improper information. The court explained on the record at sentencing that it had reviewed the presentence investigation report and its attachments, letters of support for Snider, the victim impact statements, the sentencing memorandum from Snider's counsel, and the correctional and sentencing policy of the State of Montana. Both the oral and written sentences discussed Montana sentencing policy, the circumstances of the current offense, Snider's lengthy criminal history, Snider's poor conduct while incarcerated, his addiction, and his lack of genuine remorse-all proper considerations. The sentence did not violate Snider's due process rights.
¶ 27 3. Did the court illegally impose multiple court information technology fees?
¶ 28 Snider argues, and the State concedes, that under § 3-1-317(1)(a), MCA, and State v. Pope , 2017 MT 12, ¶ 32, 386 Mont. 194, 387 P.3d 870, the District Court improperly imposed two court information ***177 technology user surcharges in Snider's sentence. We remand to the District Court to amend Snider's judgment to impose only one $10 court information technology fee.
CONCLUSION
¶ 29 The District Court's order denying Snider's motion to dismiss is affirmed. We remand for correction of the judgment to strike one of the court information technology user surcharges and otherwise affirm the District Court's sentence.
We Concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.

Because Snider pleaded guilty, we draw the facts about the February 15, 2015 shooting from the Affidavit in Support of Motion for Leave to File Information.